1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

8

DOLORES VALENZUELA, et al.,

Case No.  19-cv-07293-JSC

9

Plaintiffs,

10

v.

**ORDER RE: PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

11

BEST-LINE SHADES, INC., et al.,

Re: Dkt. No. 47

12

Defendants.

13

14          Plaintiffs Dolores Valenzuela, Adela Flores, and Raymunda Menjivar filed this putative

15  wage and hour class and collective action against their former employer Best-Line Shades, Inc.,

16  Best-Line, Inc., and its owner and president Jill Schaffer seeking to recover unpaid wages and

17  penalties under the Fair Labor Standards Act (FLSA) and California labor laws.  Plaintiffs' motion

18  for class certification under Federal Rule of Civil Procedure 23(b)(3) and for conditional

19  certification under Section 216(b) of the FLSA is now pending before the Court.[1]  (Dkt. No. 47.)

20  Defendants have not filed an opposition brief and the Best-Line entities are now defunct.  Having

21  considered Plaintiffs' motion and the relevant legal authority, the Court GRANTS Plaintiffs'

22  motion for certification of this class and collective action.

23                                          **BACKGROUND**

24          Defendants Best-Line Shades, Inc., Best-Line, Inc., and Jill Schaffer operated and

25  managed a curtain manufacturing facility "Best-Line Shades" in Richmond, California until it

26  closed in March 2020.  (Dkt. No. 25, Second Amended Complaint (SAC) at ¶¶ 18-19, 36.)

27

28  _____
[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
636(c). (Dkt. No. 10.)

United States District Court
Northern District of California

1   Plaintiffs Valenzuela, Flores, and Menjivar worked at Best-Line varying periods of time:

2   Valenzuela worked at Best-Line the longest period of time—over 20 years—before being

3   terminated at the start of the COVID-19 pandemic. (Dkt. No. 47-17, Valenzuela Decl. ¶ 3.)  Flores

4   worked at Best-Line for approximately 17 years. (Dkt. No. 47-18, Flores Decl. ¶ 3.)  Menjivar

5   worked at Best-Line for approximately 10 months, from January to October 2018. (Dkt. No. 47-

6   19, Menjivar Decl. ¶ 3.)

7       Plaintiffs allege that Defendants failed to maintain records of meal periods and instead

8   utilized an auto-deduct policy whereby 30 minutes was automatically deducted from each

9   employee's wages without any corresponding time records.  (SAC at ¶ 104.)  In addition,

10  Plaintiffs allege that Defendants advised class members on March 17, 2020 that it would cease

11  operations indefinitely, but failed to pay employees for the two-week period leading up to March

12  17.  (*Id*. at ¶ 36.)

13      Valenzuela filed this putative class and collective action on November 5, 2019.  Plaintiff

14  alleged claims for: 1) federal Fair Labor Standards Act violation, 2) failure to pay contractual

15  wages, 3) failure to pay minimum wages, 4) failure to pay overtime wages, 5) wage statement and

16  recordkeeping violations, 6) meal period violations, 7) rest period violations, 8) failure to provide

17  reimbursement for necessary business expenditures, 9) failure to pay all wages owed upon

18  termination, 10) retaliation for participating in a protected activity, and 11) violation of California

19  Unfair Competition Law.  (Dkt. No. 1.)  Four months later, Valenzuela filed a first amended

20  complaint seeking to add Ms. Flores as a named Plaintiff and to add claims for failure to make

21  payroll records available and penalties pursuant to the California Labor Code Private Attorneys

22  General Act.  (Dkt. No. 12.)   Six months later, Plaintiffs filed a motion for leave to file a second

23  amended complaint adding Plaintiff Menjivar and Defendant Richard Schaeffer.  (Dkt. No. 20.)

24  The Court granted Plaintiffs leave to amend and the second amended complaint is now the

25  operative complaint, although Plaintiffs subsequently dismissed their claims against Mr.

26  Schaeffer. (Dkt. Nos. 24, 46.)

27      In May 2021, Plaintiffs filed their motion for class certification.  Defendants failed to file

28  an opposition or response to the motion and at a subsequent status conference advised the Court

United States District Court
Northern District of California

2

that the Best-Line entities have been dissolved.  (Dkt. Nos. 48, 49, 51.)  The Court thus took the motion for class certification under submission without an opposition.  (Dkt. No. 51.)

<strong>DISCUSSION</strong>

**I. Rule 23 Class Action**

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124 (9th Cir. 2017).  To succeed on their motion for class certification, Plaintiffs must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 588 (9th Cir. 2012).  The requirements must be met for each claim for which certification is sought. *Id.*

Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast v. Behrend*, 569 U.S. 27 (2013) (internal quotation marks, citations, and emphasis omitted).

Plaintiffs seek certification of a class of:

> All non-exempt employees who were employed by BEST-LINE SHADES, INC. and BEST-LINE, INC. in the State of California at any time from November 5, 2015 to March 17, 2020.

(Dkt. No. 47-1 at 6.)  Plaintiffs also seek certification of three subclasses: (1) a meal period auto-deduction subclass, (2) a wage statement subclass, and (3) final pay and wage statement subclass. (*Id.* at 6-7, 12; Dkt. No. 47 at 2-3.)  The meal period subclass is defined as:

> All non-exempt employees who were employed by BEST-LINE SHADES, INC. and BEST-LINE, INC. in the State of California who worked at least one shift greater than 5 hours at any time from

United States District Court
Northern District of California

1

November 5, 2015 to March 17, 2020, who were subject to Defendants' auto-deduct policy.

2

(Dkt. No. 47-1 at 7.)    The wage statement subclass is defined as:

3

4

5

6

All non-exempt employees who were employed by BEST-LINE SHADES, INC. and BEST-LINE, INC. in the State of California at any time from November 5, 2015 to March 17, 2020 who failed to receive a wage statement at all, or who due to the meal period violation described in the accompanying motion failed to receive an accurate wage statement that reflected all hours worked.

7

(Dkt. No. 47 at 2.)  The final pay subclass is defined as:

8

9

10

All non-exempt employees who were employed by BEST-LINE SHADES, INC. and BEST-LINE, INC. in the State of California at any time from November 5, 2015 to March 17, 2020 who were not paid all wages due when they were terminated or quit as required by California Labor Code sections 201, 202, and 203.

11

(*Id.* at 3.)

12

### A. Plaintiffs have satisfied Rule 23(a)

13

The Court may certify a class only where "(1) the class is so numerous that joinder of all

14

members is impracticable; (2) there are questions of law or fact common to the class; (3) the

15

claims or defenses of the representative parties are typical of the claims or defenses of the class;

16

and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed.

17

R. Civ. P. 23(a).

### 1. Numerosity

18

A putative class satisfies the numerosity requirement "if the class is so numerous that

19

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticability is not

20

impossibility, and instead refers only to the "difficulty or inconvenience of joining all members of

21

the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)

22

(citation omitted).

23

Plaintiffs estimate that there are approximately 30 class members based on Defendants'

24

payroll records.  "Although there is no absolute minimum number of plaintiffs necessary to

25

demonstrate that the putative class is so numerous so as to render joinder impracticable, ... joinder

26

has been deemed impracticable in cases involving as few as 25 class members." *Davy v. Paragon*

27

*Coin, Inc.*, No. 18-CV-00671-JSW, 2020 WL 4460446, at *5 (N.D. Cal. June 24, 2020) (cleaned

28

4

up).  As Plaintiffs' proposed class exceeds this numerical threshold, and may be as high as 46, the Court finds the numerosity requirement met here.  (Dkt. No. 47-12 to Dkt. No. 47-16.)

### 2. Commonality

"[C]ommonality requires that the class members' claims 'depend on a common contention such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza*, 666 F.3d at 588-89 (quoting *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Id*. (internal quotation marks and citation omitted). The commonality requirement is construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). To that end, the commonality requirement can be satisfied "by even a single question." *Trahan v. U.S. Bank Nat'l Ass'n*, No. C 09-03111 JSW, 2015 WL 74139, at *5 (N.D. Cal. Jan. 6, 2015). Ultimately, commonality "requires the plaintiff to demonstrate the class members have suffered the same injury." *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Dukes*, 131 S. Ct. at 2551).

Plaintiffs insist that the commonality requirement is satisfied through the following common questions: "(1) whether Defendants compensated employees for all hours worked, (2) whether as a result of the failure to pay timely, final wages, Defendants are subject to waiting time penalties for failing to timely pay wages, (3) whether Defendants violated wage statement requirement provisions, and (4) whether Defendants maintained an unlawful auto-deduct meal period policy."  (Dkt. No. 47-1 at 12.)  Liability under Plaintiffs' claims turns on common factual and legal questions related to Defendants' alleged policies and practices with respect to the auto-deduction of class member's meal periods, whether Defendants failed to pay Plaintiffs' final wages, and whether Defendants provided accurate wage statements.  These issues are common for the entire class.

### 3. Typicality

Rule 23(a)(3) also requires that "the [legal] claims or defenses of the representative parties

5

[be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative and not on facts surrounding the claim or defense." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510 (N.D. Cal. Mar. 21, 2007) (citing *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Evon*, 688 F.3d at 1030 (internal quotation marks and citation omitted). The typicality requirement ensures that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

Plaintiffs' claims are typical of the class because all class members were subject to the same policies and practices; namely, Defendants' alleged failure to pay final wages, Defendants' meal period auto-deduct policy, and Defendants' failure to provide accurate wage statements or wage statements at all upon termination.

### 4. Adequacy of Representation

Rule 23(a)(4) imposes a requirement related to typicality: that the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must ask: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the actions vigorously on behalf of the class?" *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020); *see also Brown v. Ticor Title Ins.*, 982 F.2d 386, 290 (9th Cir. 1992) (noting that adequacy of representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive") (citations omitted); Fed. R. Civ. P. 23(g)(1)(B) (stating that "class counsel must fairly and adequately represent the interests of the class").

Given that there do not appear to be any conflicts between the named Plaintiffs and the other class members, and class counsel is highly experienced in class action wage and hour litigation, the Court concludes that the adequacy of representation requirement is satisfied. (Dkt.

United States District Court
Northern District of California

1    No. 47-2 at ¶¶ 3-5, 18; Dkt. No. 47-17 at ¶ 15; Dkt. No. 471-18 at ¶ 15; Dkt. No. 47-19 at ¶ 14.)

2                                                      ***

3          Accordingly, the four Rule 23(a) requirements are satisfied.

4          **B. Plaintiffs have Satisfied the Requirements of Rule 23(b)(3)**

5          Certification under Rule 23(b)(3) requires: (i) that the questions of law or fact common to

6    class members predominate over any questions affecting only individual members; and (ii) that a

7    class action is superior to other available methods for fairly and efficiently adjudicating the

8    controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule

9    23(b)(3) is "far more demanding" than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.,*

10   *LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

11         **1. Rule 23(b)(3) Predominance**

12         To meet the predominance requirement of Rule 23(b)(3), "the common questions must be

13   a significant aspect of the case that can be resolved for all members of the class in a single

14   adjudication." *Berger v. Home Depot USA, Inc*., 741 F.3d 1061, 1068 (9th Cir. 2014), abrogated

15   on other grounds, *Microsoft Corp. v. Baker*, 137 S.Ct. 1702 (2017) (internal quotation marks and

16   alterations omitted). The predominance inquiry "presumes that there is commonality and entails a

17   more rigorous analysis[.]" *Hanlon*, 150 F.3d at 1022.

18         "Considering whether 'questions of law or fact common to the class predominate' begins,

19   of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v.*

20   *Halliburton Co*., 563 U.S. 804, 809 (2011); *see also Berger*, 741 F.3d at 1068 (in determining the

21   appropriateness of class certification, the court must analyze each claim separately). "[T]he Court

22   identifies the substantive issues related to plaintiff's claims . . . then considers the proof necessary

23   to establish each element of the claim or defense; and considers how these issues would be tried."

24   *Gaudin v. Saxon Mortg. Servs., Inc*., 297 F.R.D. 417, 426 (N.D. Cal. Aug. 5, 2013) (citation

25   omitted).

26         Plaintiffs allege that Defendants failed to pay employees for all hours worked because (1)

27   Defendants failed to pay all non-exempt workers for their last two weeks of work from March 4,

28   2020 to March 17, 2021; (2) failed to provide accurate wage statements; and (3) subjected all

United States District Court
Northern District of California

1    employees to an auto-deduct policy for meals.  Common questions of fact and law predominate

2    these claims.

3            First, with respect to Plaintiffs' final pay claim, Plaintiffs allege violation of Labor Code

4    section 203.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay, without

5    abatement or reduction…., any wages of an employee who is discharged or who quits, the wages

6    of the employee shall continue as a penalty from the due date thereof at the same rate until paid or

7    until an action therefor is commenced; but the wages shall not continue for more than 30 days.");

8    Defendants admitted in their discovery responses that they failed to pay all non-exempt employees

9    for work performed from March 4, 2020 through March 17, 2020.  (Dkt. No. 47-11 at 3-4 (RFA

10   Nos. 1-4).)   Plaintiffs' final pay claim is thus subject to common proof such that it can be resolved

11   on a class-wide basis.

12           Second, Plaintiffs' wage statement claim is based on a violation of Labor Code section

13   226(a) which provides that "[a]n employer, semimonthly or at the time of each payment of wages,

14   shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher

15   paying the employee's wages, or separately if wages are paid by personal check or cash, an

16   accurate itemized statement in writing."  In support of this claim,  Plaintiffs have submitted

17   declarations from the named Plaintiffs.  Valenzuela attests that she "was not compensated for"

18   missed meal and rest breaks, and that she did not receive a paycheck on her last day of work.

19   (Dkt. No. 471-7 at ¶¶ 11, 14.)  Flores likewise attests that she "was not compensated" for missed

20   meal or rest breaks, and that she was not paid for her accrued vacation time when she left her

21   employment with Best-Line.  (Dkt. No. 47-18 at ¶¶ 12, 14.)   Finally, Menjivar attests that she did

22   not receive pay statements showing her deductions for taxes or other benefits and she was not

23   compensated for missed meal or rest breaks. (Dkt. No. 47-19 at ¶¶ 5, 12.)  Accordingly, common

24   legal and factual issues predominate Plaintiffs' wage statement claims as well.

25           Finally, with respect to the meal period auto-deduct policy, Plaintiffs allege that

26   Defendants' violated Labor Code section 512(a) which requires employers to provide employees

27   with a 30-minute unpaid meal period when they work more than five hours per day, unless the

28   total number of hours worked is six hours or less. Cal. Lab. Code § 512(a); Cal. Code Regs. tit. 8,

United States District Court
Northern District of California

§ 11010(11)(A). A second 30-minute meal period is required when an employee works more than

ten hours per day, unless the total number of hours worked is twelve hours or less.  *Id.*  In

addition, employers are required to keep accurate "[t]ime records showing when the employee

begins and ends each work period."  Cal. Code Regs. tit. 8, § 11010(7)(A).  Employers who fail to

provide meal periods as required "shall pay the employee one (1) hour of pay at the employee's

regular rate of compensation for each workday that the meal period is not provided."  *Id.* at §

11010(11)(D).

Plaintiffs contend that these claims can be resolved through common proof because

Defendants admit that they did not pay employees for one hour of pay at the employees' regular

rate of compensation for each workday that a meal period was required, but not provided.  (Dkt.

No. 47-8 at 7, (RFA No. 22).)  Plaintiffs also emphasize that although there are no records of

employees taking meal periods, the timekeeping documents show that Defendants automatically

deducted 30 minutes of time from shifts lasting at least five hours, which translates to an

automatic deduction of 30 minutes of wages without supporting documentation. (Dkt. No. 47-1 at

14 (citing Dkt. Nos. 47-4—47-7, Garcia Decl. Exs. 2-5).)  In addition, the named Plaintiffs attest

that they were never required to clock in and out for lunch; instead, meal periods were taken

erratically and often interrupted.  (Dkt. No. 47-17, Valenzuela Decl. at ¶¶ 5, 9,11; Dkt. No. 47-18,

Flores Decl. at ¶¶ 5, 8, 9, 12; Dkt. No. 47-19, Menjivar Decl. at ¶¶ 6, 9, 10, 12.)

The Court is persuaded that common issues predominate with respect to Plaintiffs' meal

period auto-deduction subclass.  *See Nguyen v. Baxter Healthcare Corp*., 275 F.R.D. 596, 600

(C.D. Cal. 2011) (certifying an auto-deduction class where, as here, the evidence suggested that

the employer "used software which automatically deducted one 30 minute meal break per shift

from all employees' time, without regard to whether a first meal break was late or missed, or

whether a second meal break was required on a shift of more than 10 hours.").  Critically, in

*Nguyen* and other cases that have certified auto-deduct classes, there "was no basis for finding that

any of these actions were taken on an individual case-by-case basis, nor is the putative class so

large and disparate that it was subject to a wide variety of supervisory practices which would

require separate analysis." *Id.*; *see also Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 635 (S.D.

1    Cal. 2010); *Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG(BLM), 2009 WL 4809646

2    (S.D. Cal. Dec. 9, 2009).  So too here.

3        **2. Rule 23(b)(3) Superiority**

4        A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of

5    common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-*

6    *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  In evaluating superiority, "courts consider the

7    interests of the individual members in controlling their own litigation, the desirability of

8    concentrating the litigation in the particular forum, and the manageability of the class action."

9    *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), modified, 2007 WL

10   2220972 (N.D. Cal. Aug. 1, 2007), aff'd sub nom., *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d

11   1137 (9th Cir. 2009).  A class action is superior to individual litigation with respect to Plaintiffs'

12   Plaintiffs' final pay subclass and their meal period subclass for several reasons.

13       First, there is no indication that members of the proposed class or subclasses have a strong

14   interest in individual litigation or an incentive to pursue their claims individually. Second, a class

15   action will achieve economies of time, effort and expense and promote uniformity. There is no

16   similar litigation already underway elsewhere that weighs against proceeding as a class, nor any

17   reason not to try the class action in this District.  Finally, a class action is more manageable

18   because several claims turn on Defendants' common policies and practices, which can be proven

19   through evidence that will be applicable to the entire class.  *See Bowerman v. Field Asset Servs.,*

20   *Inc.*, 242 F. Supp. 3d 910, 936 (N.D. Cal. 2017) (recognizing as legitimate the defendant's

21   "apprehension regarding manageability," but finding it "insufficient to tip the scales away from

22   the superiority of proceeding as a class when [the defendant's] liability to over 100 class members

23   depends on common proof").

24                                            ***

25       Accordingly, the Court grants Plaintiffs' motion for Rule 23(b)(3) certification of their

26   final pay, wage statement, and meal period subclasses.

27   //

28   //

United States District Court
Northern District of California

1

**II. FLSA Collective Action**

2          Under the FLSA, an employee may bring a collective action on behalf of other "similarly

3    situated" employees. 29 U.S.C. § 216(b). Conditional certification in the FLSA context does not

4    "produce a class with an independent legal status, or join additional parties to the action." *Genesis*

5    *Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Instead, "[t]he sole consequence" of a

6    successful motion for conditional certification is "the sending of court-approved written notice" to

7    workers who may wish to join the litigation as individuals. *Id.*; *see also* 29 U.S.C. § 216(b) ("No

8    employee shall be a party plaintiff to any such action unless he gives his consent in writing to

9    become such a party and such consent is filed in the court in which such action is brought."). 

10   Unlike a Rule 23 class action, "the district court in a collective action plays no . . . gatekeeping

11   role." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1110 (9th Cir. 2018). District courts retain

12   discretion to determine whether a collective action is appropriate. *See Leuthold v. Destination Am.,*

13   *Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). To obtain certification, the plaintiff must show that

14   the plaintiff and the putative collective action participants are "similarly situated." *Id*. According

15   to the Ninth Circuit, "similarly situated" means "plaintiffs must be alike with regard to some

16   material aspect of their litigation." *Campbell*, 903 F.3d at 1114. Thus, "[p]arty plaintiffs are

17   similarly situated, and may proceed in a collective, to the extent they share a similar issue of law

18   or fact material to the disposition of their FLSA claims." *Id*. at 1117.

19          The "near-universal practice" that courts use to determine whether claims under the FLSA

20   should proceed in a collective is the two-step certification process. *See Campbell*, 903 F.3d at

21   1100. Plaintiffs' now pending motion for conditional certification is the first-step in this two-step

22   process. At this stage, "the court first makes an initial 'notice stage' determination of whether

23   potential opt-in plaintiffs exist who are similarly situated to the representative plaintiffs, and thus

24   whether a collective action should be certified for the purpose of sending notice of the action to

25   potential collective action participants." *Herrera v. EOS IT Mgmt. Sols., Inc*., No. 20-CV-01093-

26   LHK, 2020 WL 7342709, at *3 (N.D. Cal. Dec. 14, 2020) (internal citation and quotation marks

27   omitted). "'The sole consequence' of a successful motion for preliminary certification is 'the

28   sending of court-approved written notice' to workers who may wish to join the litigation as

*United States District Court*
*Northern District of California*

11

1    individuals." *Campbell*, 903 F.3d at 1101 (quoting *Symczyk*, 569 U.S. at 75). The second step of

2    the certification process occurs after discovery is complete at which the party opposing conditional

3    collective action certification may move to decertify the collective action. *Leuthold v. Destination*

4    *Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). "[T]he Court then determines the propriety and

5    scope of the collective action using a stricter standard." *Stanfield v. First NLC Financial Services,*

6    *LLC*, 2006 WL 3190527, *2 (N.D. Cal. Nov. 1, 2006); *Campbell*, 903 F.3d at 1119 (applying a

7    "substantial evidence" standard to the decertification determination).

8        At the first stage, "conditional certification is by no means automatic, but Plaintiffs'

9    burden is light." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL 6431869,

10   at *2 (C.D. Cal. Sept. 28, 2018). "The district court's analysis is typically focused on a review of

11   the pleadings but may sometimes be supplemented by declarations or limited other evidence."

12   *Campbell*, 903 F.3d at 1109. The level of consideration is "lenient" and "loosely akin to a

13   plausibility standard." *See id*.

14       Plaintiffs seek certification of a FLSA opt-in class of:

15           All non-exempt employees who were employed by BEST-LINE
             SHADES, INC. and BESTLINE, INC. in the State of California at
16           any time from March 4, 2020 to March 17, 2020, who performed
             work for Defendants prior to March 17, 2020 and who did not receive
17           timely, final payment of all overtime wages on their final check.

18   (Dkt. No. 47-1 at 18.)  Plaintiffs request that the Court order notice pursuant *to Hoffmann La*

19   *Roche Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989), because members of the collective are

20   unaware of the action or the opt-in procedure.

21       For the reasons discussed above with respect to Plaintiffs' final pay and wage statement

22   subclasses, Plaintiffs have shown that members of the collective are similarly situated as required

23   under the first step of the FLSA certification inquiry.  Under Labor Code sections 203 and 226,

24   employers are required to pay final wages at termination and provide employees with an itemized

25   wage statement.  Plaintiffs have submitted declarations from the named Plaintiffs and Defendants'

26   discovery responses which indicate that Defendants did neither.  (Dkt. No. 47-11 at 3-4 (RFA

27   Nos. 1-4); Dkt. No. 47-17, Valenzuela Decl. at ¶ 13.)  Accordingly, Plaintiffs have satisfied their

28   burden at the first stage to make "substantial allegations" that they and the putative class members

United States District Court
Northern District of California

12

"were subject to a single illegal policy." Conditional certification of the proposed FLSA class is thus appropriate.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for certification of a class and collective action under Federal Rule of Civil Procedure 23(b)(3) and FLSA, Section § 216(b) is GRANTED. Dolores Valenzuela, Adela Flores, and Raymunda Menjivar are appointed as Class Representatives and Mallison & Martinez is appointed Class Counsel.

Plaintiffs shall submit a proposed class notice and notice plan by August 27, 2021.

Plaintiffs shall move for summary judgment on or before November 18, 2021.

This Order disposes of Docket No. 47.

**IT IS SO ORDERED.**

Dated: August 10, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

13