UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES VALENZUELA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BEST-LINE SHADES, INC., et al.,<br><br>Defendants. | Case No. 3:19-cv-07293-JSC<br><br>**ORDER DENYING SECOND RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 110 |

Plaintiffs Dolores Valenzuela, Adela Flores, and Raymunda Menjivar filed this wage and hour class and collective action against their former employer Best-Line Shades, Inc., Best-Line, Inc., and its owner and president Jill Schaffer seeking to recover unpaid wages and penalties under the Fair Labor Standards Act (FLSA) and California labor laws. Plaintiffs' second amended motion for default judgment is now pending before the Court. (Dkt. No. 110.) Having considered the motion and evidence in support of Plaintiffs' damages, the Court DENIES the second amended motion for default judgment.

Over the two years since default was entered in this action, Plaintiffs have filed three motions for default judgment. (Dkt. Nos. 73, 105, 110.) The Court denied the first motion based on concerns regarding Plaintiffs' ability to identify class and collective members, and failure to provide notice to the class or collective. (Dkt. Nos. 74, 75, 76.) Plaintiffs subsequently provided notice to the class and collective, and after multiple extensions of time, filed an amended motion for default judgment. (Dkt. Nos. 79, 81, 83, 85, 87, 89, 91, 93, 94, 96, 98, 100, 102, 104, 105.) The Court denied Plaintiffs' amended motion for default judgment based on numerous issues. (Dkt. No. 107.) After Plaintiffs failed to timely file their second amended motion for default, the Court ordered Plaintiffs to show cause as to why the action should not be dismissed for failure to

1  prosecute. (Dkt. No. 108.) Plaintiffs then filed a response to the order to show cause and the now
2  pending second amended motion for default judgement. (Dkts. No. 109, 110.) This motion, like
3  its predecessors, suffers from numerous issues and must be denied.

4    Plaintiffs seek over $2.6 million in damages and over $1.4 million in PAGA penalties, but
5  fail to adequately prove up their request for damages despite multiple orders to do so. (Dkt. No.
6  98; 107.) "[A] plaintiff must 'prove-up' his damages. That is, the plaintiff must 'provide evidence
7  of its damages, and the damages sought must not be different in kind or amount from those set
8  forth in the complaint.'" *Orange Cnty. Elec. Indus. Health & Welfare Tr. Fund v. Moore Elec.*
9  *Contracting, Inc.*, No. 11-CV-00942-LHK, 2012 WL 4120348, at *3 (N.D. Cal. Sept. 18, 2012)
10 (internal citations omitted); *see also Marquez v. NLP Janitorial, Inc.*, No. 16-CV-06089-BLF,
11 2019 WL 652866, at *4-10 (N.D. Cal. Feb. 15, 2019) (discussing the required showing and type of
12 evidence necessary to prove up damages for similar labor code claims).

13   First, the damages calculations in the motion refer to "Woolfson Decl. ¶ 9" as the basis for
14 the calculations. (Dkt. No. 110-1 at 23-25.) Paragraph 9 to the Woolfson Declaration sets forth
15 his qualifications. (Dkt. No. 110-11 at 4.) No basis for damages calculations is provided in
16 Paragraph 9.

17   Second, to the extent Mr. Woolfson's declaration elsewhere includes information regarding
18 the basis for the damages calculations, he appears to base his calculations on the assumption "that
19 there were approximately 30,820 shifts that were covered by 7,141 checks with check dates
20 between 07/03/2014 and 05/08/2020 that were worked by 90 employees." (Dkt. No. 110-11 at ¶
21 39.) However, the class period begins on November 5, 2015. (Dkt. No. 53 at 3; *see also* Dkt. No.
22 25 at ¶ 26.) It is thus unclear why Mr. Woolfson's calculations are based on pay records dating
23 back to July 2014. Plaintiffs offer no explanation for why they are entitled to damages dating
24 back this far.

25   Third, Mr. Woolfson attests "[t]he complete output of [his] findings" are set forth in the
26 Excel spreadsheet attached as Exhibit M. Exhibit M, however, raises more questions than it
27 answers. For example, it lists Ms. Valenzuela's check start and finish dates as July 3, 2014
28 through August 19, 2015. (Dkt. No. 110-12.) These dates are both outside of the class period and

contrary to the dates alleged in Ms. Valenzuela's declaration. (Dkt. No. 110-15 at ¶ 4 ("I worked for Defendants from approximately 1998 to March, 2020.")) At least ten other individuals listed on Exhibit M have check finish dates before the class period begins. (Dkt. No.110-12.)

Fourth, the actual the basis of the damages calculations remains unclear. For example, for the meal periods and premiums claim, Plaintiffs state: "Accounting for the wage rate of each employee at the time of each of their shifts, the total amount of unpaid meal break premium is $521,104.25," but the motion does not indicate the wage rate. (Dkt. No. 110-1 at 23.) Nor are the wage rates stated in Mr. Woolfson's declaration. (Dkt. No. 110-11 at 15-16.) Adding to the confusion, Plaintiffs' declarations on this point are inconsistent. Ms. Flores attests her hourly rate was $16.50/hour, although she estimates the "average wage earned by Class Members was $17.50 per hour." (Dkt. No. 110-14 at ¶¶ 6, 8.) Ms. Menjivar attests her hourly rate was $15.00 per hour, but the average hourly rate for class members was $15.50 per hour. (Dkt. No. 110-13 at ¶¶ 6, 8.) Ms. Valenzula attests she was paid $15.50 per hour, but estimates class members made $16 per hour. (Dkt. No. 110-15 at ¶¶ 6, 8.)

Fifth, the motion contends Plaintiffs are entitled to 7 percent simple interest for the unpaid meal break premium, the "statutorily appropriate 10% interest rate" for auto-deducted wages, and additional "liquidated damages for the auto-deductions," but no statutory basis is provided for *any* of these varying interest or damages calculations. (Dkt. No. 110-1 at 23-24.)

Sixth, the motion states "no additional damages sought" for Plaintiffs' FLSA overtime damages, failure to pay contractual/overtime wages, failure to pay minimum wages, failure to pay premium wages, and failure to reimburse business expenses claims. (Dkt. No. 110-1 at 23-24.) Plaintiffs, however, offer no explanation for why they are not seeking damages for these certified claims.

Seventh, Plaintiffs seek PAGA penalties for six Labor Code violations. Beyond citing the Labor Code section, Plaintiffs provide no explanation of the nature of the violation or what evidence supports their claim for each of the six PAGA penalties sought. Instead, Plaintiffs state: "[t]he above Labor Code violations also give rise to PAGA penalties as follows." (Dkt. No. 110-1 at 26.) But the discussion of the Labor Code violations under the referenced class damages

1   section notably does not refer to the violations by Labor Code section and the Court thus cannot

2   tell if they match up.  Further, Plaintiffs appear to only seek class damages for four Labor Code

3   violations, but PAGA penalties for six—again, without explanation.  (Dkt. No. 110-1 at 23-28.)

4           Finally, as to individual damages, the motion indicates it is only seeking individual

5   damages for Ms. Valenzuela's retaliation claim.  (Dkt. No. 110-1 at 25.)  In a footnote, Plaintiffs

6   indicate this is because "[t]he remaining Plaintiffs have no individual claims and seek no

7   additional damages or penalties for themselves other than those to which they would be entitled as

8   Class Members."  (Dkt. No. 110-1 at 25, n.2.)  It is unclear, however, why Ms. Flores, Ms.

9   Menjivar, and Ms. Valenzuela, do not have individual claims for failure to pay overtime wages,

10  failure to pay minimum wages, failure to pay premium wages, and failure to reimburse business

11  expenses claims.  Ms. Flores attests she worked approximately 7.5 hours of overtime a week.

12  (Dkt. No. 110-14 at ¶ 5.)  Ms. Valenzuela likewise estimates she worked an average of three hours

13  of overtime a week.  (Dkt. No. 110-15 at ¶ 8.)   Moreover, the declarations Ms. Valenzula, Ms.

14  Flores, and Ms. Menjivar provided in support of class certification also attest to a failure to

15  provide meal and rest breaks and requirements that they provide their own work supplies.  (*See,

16  e.g.*, Dkt. No. 110-14 at 6-7; Dkt. No. 110-13 at 6-7; Dkt. No. 110-15 at 6-8.)  And yet Plaintiffs

17  seek no damages on their behalf for these claims without explanation.

18          Since default was entered in this matter, 11 different individuals have worked on this

19  matter for Plaintiffs' counsel.  (Dkt. No. 110-7 at 15-18.)  Whether because of lack of continuity,

20  lack of oversight, or both, each filing since this date has suffered from substantive and technical

21  deficiencies.  The Court has expended a tremendous amount of resources pointing out these issues

22  and giving Plaintiffs opportunity after opportunity to file a proper motion for default judgment.

23  As the Court noted in its last order denying Plaintiffs' motion for default judgment, it is mindful of

24  the difficulties Plaintiffs may have recovering any judgment in this action, but that is no excuse for

25  not submitting careful work product and wasting judicial resources.  (Dkt. No. 107.)   The hearing

26  scheduled for May 2, 2024 at 10:00 a.m. is converted to a status conference to be held at 1:30 p.m.

27  via Zoom video that same day.  Lead counsel is required to attend. Plaintiffs shall submit a case

28  management conference statement **by May 1, 2024,** that provides a plan for resolution of this case.

This Order disposes of Docket No. 110.

**IT IS SO ORDERED.**

Dated: April 26, 2024

_____
JACQUELINE SCOTT CORLEY
United States District Judge