UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOLORES VALENZUELA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>BEST-LINE SHADES, INC., et al.,<br><br>    Defendants. | Case No. 3:19-cv-07293-JSC<br><br>**ORDER RE: PLAINTIFFS' THIRD AMENDED MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 116 |

Plaintiffs Dolores Valenzuela, Adela Flores, and Raymunda Menjivar filed this wage and hour class and collective action against their former employer Best-Line Shades, Inc., Best-Line, Inc., and its owner and president Jill Schaffer, seeking to recover unpaid wages and penalties under the Fair Labor Standards Act (FLSA) and California labor laws. Plaintiffs' third amended motion for default judgment is now pending before the Court. (Dkt. No. 116.[1]) Having considered the motion and evidence in support of Plaintiffs' damages, the Court VACATES the July 11, 2024 hearing and GRANTS IN PART and DENIES IN PART the motion for default judgment as set forth below.

**BACKGROUND**

**I.    Complaint Allegations**

Defendants Best-Line Shades, Inc., Best-Line, Inc., and Jill Schaffer operated and managed a curtain manufacturing facility "Best-Line Shades" in Richmond, California until March 2020 when the facility closed. (Dkt. No. 25, Second Amended Complaint (SAC) at ¶¶ 18-19, 36.) Plaintiffs Valenzuela, Flores, and Menjivar worked at Best-Line for varying times before being terminated at the start of the COVID-19 pandemic. (Dkt. No. 47-17, Valenzuela Decl. ¶ 3.)

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

1    Plaintiffs allege that Defendants failed to maintain records of meal periods and instead
2 utilized an auto-deduct policy whereby 30 minutes was automatically deducted from each
3 employee's wages without any corresponding time records. (SAC at ¶ 104.) In addition,
4 Plaintiffs allege Defendants advised class members on March 17, 2020 that it would cease
5 operations indefinitely, but failed to pay employees for the two-week period leading up to March
6 17. (Id. at ¶ 36.)

## II. Procedural History

Plaintiff Valenzuela filed this action on November 5, 2019 and alleged violations of the FLSA and state labor laws. (Dkt. No. 1.) Four months later, Ms. Valenzuela filed a first amended complaint seeking to add Ms. Flores as a named Plaintiff and to add claims for failure to make payroll records available and penalties pursuant to the California Labor Code Private Attorneys General Act (PAGA). (Dkt. No. 12.) Six months later, Plaintiffs filed a motion for leave to file a second amended complaint adding Plaintiff Menjivar and Defendant Richard Schaeffer. (Dkt. No. 20.) The Court granted Plaintiffs leave to amend and the Second Amended Complaint is now the operative complaint, although Plaintiffs subsequently dismissed their claims against Mr. Schaeffer. (Dkt. Nos. 24, 46.)

In May 2021, Plaintiffs filed their motion for class certification. Defendants failed to file an opposition or response to the motion and at a subsequent status conference advised the Court that the Best-Line entities have been dissolved. (Dkt. Nos. 48, 49, 51.) The Court thus took the motion for class certification under submission without an opposition. (Dkt. No. 51.) On August 10, 2021, the Court granted Plaintiffs' motion for certification of a class and collective action under Federal Rule of Civil Procedure 23(b)(3) and FLSA, Section § 216(b). (Dkt. No. 53.) The Court subsequently granted Plaintiffs' motion to compel Defendants to provide a copy of the class list so that class notice could be provided. (Dkt. No. 60.) Defendants failed to comply with that order and Defense counsel subsequently moved to withdraw from representation of (1) the Best-Line entities because they no longer exist as legal entities, and (2) Ms. Schaffer because she repeatedly failed to maintain communication with counsel and ceased paying her legal fees in breach of their written representation agreement. (Dkt. No. 61.)

On December 2, 2021, the Court granted counsel's motion to withdraw and ordered

1  Defendants to obtain new counsel within 30 days.  (Dkt. No. 63.)  Ms. Schaffer was given the option
2  to enter an appearance pro se, but the Best-Line entities were advised that they had to retain counsel
3  based on "the longstanding rule that [c]orporations and other unincorporated associations must appear
4  in court through an attorney."  (Dkt. No. 63 at 3 (quoting *D-Beam Ltd. P'ship v. Roller Derby Skates,*
5  *Inc.*, 366 F.3d 972, 973–74 (9th Cir. 2004) (internal citations omitted)); *see also* Civ. L.R. 3-9(b).)
6  Plaintiffs moved for Defendants' default after the 30 days passed and no counsel had entered an
7  appearance for either the Best-Line entities or Ms. Schaffer, and nor had Ms. Schaffer entered an
8  appearance pro se or otherwise communicated with the Court.  (Dkt. No. 65.)

On January 25, 2022, the Court issued an Order to Show Cause as to why it should not enter Defendants' default based on their failure to comply with the Court's Order to produce a class list, failure to participate in this action, and failure to enter an appearance either pro se or through counsel in the case of Ms. Schaffer, or through counsel in the case of the Best-Line entities.  (Dkt. No. 67.)  Defendants did not respond to the Court's Order and the Court granted Plaintiffs' request for entry of default on February 18, 2022.  (Dkt. No. 68.)  Plaintiffs then filed a motion for default judgment which the Court ultimately denied based on concerns regarding Plaintiffs' ability to identify class and collective members, and failure to provide notice to the class or collective.  (Dkt. Nos. 74, 75, 76.)  Plaintiffs subsequently filed two further motions for default judgment which the Court denied without prejudice to refiling to include, in particular, additional information in support of their damages' claims.  (Dkt. Nos. 107, 112.)  Plaintiffs thereafter filed the now pending second amended motion for default judgment which is supported by the declaration of Plaintiffs' counsel, Stan Mallison, and the declaration of Plaintiffs' expert, Aaron Woolfson.  (Dkt. No. 116.)

**LEGAL STANDARD**

After entry of default, a court may exercise discretion to grant default judgment on the merits of the case.  Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising discretion to grant default judgment, courts consider the factors laid out in *Eitel*:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal

3

Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). On default, the complaint's factual allegations regarding liability are deemed admitted by the non-moving party and are accepted as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

## DISCUSSION

### A.   Sufficiency of Service of Process

Before entering default judgment, the Court must assess whether the party against whom default judgment is sought was properly served with notice of the action. *Penpower Tech. Ltd. V. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008). As Defendants initially appeared and defended this action, any issues as to service of process have been waived. *See* Fed. R. Civ. Pro 12(b).

### B.   Jurisdiction

#### 1.   Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331, federal courts have jurisdiction over claims arising from federal law. Here, subject-matter jurisdiction is proper because Plaintiffs' Second Amended Complaint alleges a claim under the FLSA, 29 U.S.C. § 216. (Dkt. No. 25 ¶¶ 57-64.)

#### 2.   Personal Jurisdiction

For a corporation, general personal jurisdiction exists where it maintains its principal business place. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, personal jurisdiction is proper because Best-Line Shades, Inc., was a California corporation, and Ms. Schaffer, is a California resident who was the owner, director, and/or managing agent of Best-Line Shades. (*Id*. at ¶¶ 19-20.) In addition, as both Defendants initially appeared and defended this action, they waived any objection to personal jurisdiction. *See* Fed. R. Civ. Pro. 12(b).

### C.   *Eitel* Factors

Having concluded the threshold requirements of service and jurisdiction are met, the Court next considers the *Eitel* factors and concludes that the majority of those factors weigh in favor of entering default judgment against Defendants.

The Court first considers whether Plaintiffs' FLSA and California Labor Code claims are adequately pled and sufficient to find liability on the facts alleged, which must be taken as true (second

1  and third factors). Plaintiffs seek default judgment against both Best-Line Shades and Ms. Schaffer as
2  the owner, director, and/or managing agent of Best-Line Shades. Both the employing company and
3  individuals acting directly or indirectly on behalf of the company may be liable under the Fair Labor
4  Standards Act ("FLSA"). The FLSA applies to "employers," which the Act defines as "any person
5  acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. §
6  203(d). The definition of "employer" is to be given "an expansive interpretation in order to effectuate
7  the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011–12 (9th Cir. 1999) (en
8  banc) (internal citation omitted). An individual may be held liable under the FLSA when she exercises
9  "control over the nature and structure of the employment relationship," or "economic control" over the
10 relationship. *Id*. at 1012. The allegations in the Second Amended Complaint and in the second
11 amended motion for default judgment are sufficient to establish the individual defendant is an
12 "employer" under the FLSA and she may be held liable for violating the minimum wage, overtime and
13 record keeping provisions of the statute. *See Solis v. United Buffet, Inc*., No. 11-cv-4194-RMW, 2012
14 WL 669687, at *3 (N.D. Cal. Feb. 29, 2012). The same is true as to Plaintiffs' claims for violation of
15 the California Labor Code, Labor Code § 558.1. *See Usher v. White*, 64 Cal. App. 5th 883, 886 (2021)
16 ("we interpret the words 'violates, or causes to be violated' in section 558.1 in their ordinary meaning
17 to impose liability on an 'owner' … when acting on behalf of an employer, the "owner" has personal
18 involvement in the enumerated violations in section 558.1; or, absent personal involvement, has
19 sufficient participation in the activities of the employer—including, for example, over those
20 responsible for the alleged wage and hour violations—such that the 'owner' may be deemed to have
21 contributed to, and thus have 'cause[d]' such violations."). Further, the allegations as to both are
22 sufficient to state a claim under the federal and state labor laws alleged.
23         Turning to the other *Eitel* factors, Plaintiffs would be prejudiced if the Court declined to enter
24 default judgment against the defaulted Defendants (first factor) because Plaintiffs have no other
25 recourse against Defendants. Plaintiffs ask the Court to award the considerable sum of more than $2
26 million in damages and PAGA penalties, as well as $332,583.20 in attorney fees and costs pursuant
27 to the FLSA and the California Labor Code. (Dkt. No. 116-2 at ¶¶ 54-55; Dkt. No. 116-11 at ¶¶ 20-
28 25.) Although entry of default judgment may not be appropriate when a large sum of money is at

1  stake (fourth factor), the damages sought here are set by federal and state labor laws and Defendants
2  have chosen not to defend themselves in this action. There is no indication that Defendants' failure to
3  respond is due to excusable neglect given Defendants' participation in this action for over two years
4  before default, nor is there any indication of a dispute concerning material facts (fifth and sixth
5  factors). Although public policy strongly favors decisions on the merits (seventh factor), given
6  Defendants' refusal to litigate, it does not appear litigation of the merits will be possible in this case.
7  Accordingly, the Court concludes the *Eitel* factors weigh in Plaintiffs' favor.

### D. REMEDIES

The Court turns to the question of remedies. Plaintiffs seek compensatory damages and PAGA penalties, as well as attorneys' fees and costs. "[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

#### 1. Damages and Penalties

As the Court noted in its prior Order denying Plaintiffs' motion for default judgment, Plaintiffs must prove up their damages claim by "'provid[ing] evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint.'" (Dkt. No. 112 at 2 (quoting *Orange Cnty. Elec. Indus. Health & Welfare Tr. Fund v. Moore Elec. Contracting, Inc.*, No. 11-CV-00942-LHK, 2012 WL 4120348, at *3 (N.D. Cal. Sept. 18, 2012) (internal citations omitted)). In response, Plaintiffs submitted additional information in support of their claimed damages; in particular, a new declaration from their expert Aaron Woolfson which sets forth in detail the basis for the damages' calculations for each claim. (Dkt. No. 116-11.)

After Defendants failed to produce a class list or any payroll records, Plaintiffs subpoenaed Paychex to obtain payroll data. (Dkt. No. 79.) From these records Mr. Woolfson was able to determine "the number of employees, how many paychecks were paid to each employee and as an application of mathematical necessity, the number of shifts that were contained on each paycheck that were equal-to-or-greater than 3½ hours, and greater than five (5) hours." (Dkt. No. 116-11 at ¶ 8.) Next, he used a mathematical formula based on the number of hours worked "to determine how many shifts are constituent to a paycheck" and he concluded "a very close

approximate quantity of those shifts are greater than 3½ hours and greater than five (5) hours." (*Id*.) From this data, Mr. Woolfson was able to calculate "the number of paychecks that could be subject to various recoveries under the theories in this matter." (*Id*. at ¶ 14.) His declaration provides detailed descriptions of these calculations and attaches exhibits further explaining the basis for his calculations. (*Id*. at ¶¶ 16-35; Dkt. No. 116-23, Dkt. No. 116-24.) Having reviewed Mr. Woolfson's calculations and Plaintiffs' explanation of the legal basis for the calculations (Dkt. No. 116-1 at 21-25), the Court is persuaded Plaintiffs have adequately substantiated their damages claims. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (holding the district court did not err in relying on the "detailed account of how [plaintiff] calculated each figure" and rejecting argument the calculations were unreliable because defendant's "highly questionable" conducted necessitated the need to rely on estimates for the damages' calculations). Plaintiffs are awarded $1,642,572.92 in class damages.

Plaintiff Valenzuela's individual claim of damages for violation of California Labor Code §§ 226(f) and 226(h) is likewise substantiated. Defendants terminated Ms. Valenzuela following her request for her payroll and personnel records. (Dkt. No. 116-2 at ¶¶ 52-53.) Ms. Valenzuela is entitled to $948 as individual damages for these violations.

Finally, Plaintiffs have adequately substantiated their claim for PAGA penalties based on the above violations. The calculation of these penalties is set for in Mr. Mallison's declaration and is based on Mr. Woolfson's analysis of the payroll data. (Dkt. No. 116-2 at ¶¶ 54-55.) The total PAGA penalties are $845,750, with 75% awarded to the LWDA in the amount of $634,312.59 and 25% awarded to Plaintiffs and the other Aggrieved Employees in the amount of $211,437.50. (*Id*. at ¶ 55.)

### 2.     Attorneys' Fees and Costs

Plaintiffs also seek $329,165.00 in attorneys' fees and $3,418.20 in costs. (Dkt. No. 116-2 at ¶¶ 50-51; Dkt. No. 116-7; Dkt. No. 116-8.) As the prevailing party, Plaintiffs are entitled to attorneys' fees and costs under the FLSA, California Labor Code, and PAGA. *See* 29 U.S.C. § 216(b); Cal. Lab. Code §§ 226(e), 1194(a), 2699. Plaintiffs' request for attorneys' fees is granted in part. Plaintiffs are not entitled to fees for the time spent redoing the motion for default

7

judgment as Plaintiffs should have made a more fulsome showing in the first instance. As a result, the Court reduces the total amount of attorneys' fees by 10% or $32,916.50. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("the district court can impose a small reduction, no greater than 10 percent--a 'haircut'--based on its exercise of discretion and without a more specific explanation"). Plaintiffs are awarded $296,248.50 in attorneys' fees and $3,418.20 in costs.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for default judgment is GRANTED IN PART and DENIED IN PART. Defendants are liable for a total of $2,489,072.92, which includes the following:

1. Class Damages: $1,642,572.92;
2. Individual Damages for Ms. Valenzuela: $948;
3. PAGA penalties: $845,750, with 75% ($634,312.59) awarded to the LWDA and 25% ($211,437.50) awarded to Plaintiffs and the other Aggrieved Employees; and
4. Attorneys' Fees and Costs: $299,666.70.

This Order disposes of Docket No. 116.

**IT IS SO ORDERED.**

Dated: July 8, 2024

JACQUELINE SCOTT CORLEY
United States District Judge